UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
UNITED STATES OF AMERICA,

    - against -

ARNALDO GENER,

                    Defendant.
------------------------------------------X

04 Cr. 424-17 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

10-26-05

On February 4, 2005, Defendant Arnaldo Gener ("Gener") appeared before the Honorable Andrew J. Peck of this district and allocuted to the conduct charged in the sole count of the indictment, conspiracy in violation of 21 U.S.C. § 846 to distribute and possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A). Gener's plea was accepted on March 21, 2005. Gener will be sentenced to time served and five years supervised release with a special condition that he be confined to his mother's residence for a period of thirty-six months while attending or receiving special education classes, vocational training, drug treatment and psychotherapy as needed. A special assessment fee of $100 is mandatory and is due immediately.

1

## Prior Proceedings

On May 6, 2004, the government filed a sealed indictment against Gener and his co-defendants, charging them with a single count of violating 21 U.S.C. § 846, conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin. The indictment was unsealed on May 11, 2004, and an arrest warrant for Gener was issued on the same day. Gener was arrested on June 15, 2004, and he has remained in custody since that time. Gener entered a guilty plea on February 4, 2005, which this Court accepted on March 21, 2005, and currently Gener is scheduled for sentencing on October 26, 2005.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

## The Defendant

Gener was born in Rio Piedra, Puerto Rico in 1984. He was the only child born to the marital union between Arnaldo Gener, Sr. and Ana Marrero. The senior Gener, who was born in Cuba, died tragically in January 2003 at the age of 53 after battling a severe chronic illness for almost a decade.

Gener was brought by his parents to New York City when he was only one month old, and he was raised in the Bronx by both parents. His father was a maintenance worker and superintendent of one of the buildings where the family resided. For a short time, Mr. Gener's mother was a clerical employee at a real estate agency in the Bronx and supplemented her income as a babysitter. Throughout his youth, Gener moved frequently with family, at one point living for an extended period of time on Vyse Avenue, which is within the geographical area of the charged conspiratorial conduct in this matter.

Gener's mother, Ana Marrero, informs the Court that family life in their household was not normal or happy and advises that she and Gener's father had a difficult marriage due to Gener's father's extramarital affairs. This marital tension de-stabilized the home and severely impacted Gener's emotional health as a child and young adolescent.

In addition, Gener suffered from an extreme learning disability, which hampered his social development through childhood. Gener's mother advises that she invested much of her time and attention to seeking out adequate therapy, counseling and medical attention for her son but had to less time to devote to him as her husband's health deteriorated more rapidly.

As a result of his learning disability, Gener was placed in a special education program when in the third grade. Once in these special education classes, Gener began to exhibit inappropriate behavior and significant amounts of internal frustration that, at times, would erupt into bursts of short-temperedness. As a result, Gener was given psychological counseling from this early age and prescribed mediation as part of this therapeutic regimen.

During this time, Gener moved between schools often, as his family moved to various apartments in the Bronx. Adding to his already unstable home-life, Gener's frequent shifts in and out of different schools contributed to the lack of a continuous support network in his early adolescent years. Without a consistent group of teachers and advisors, Gener lost interest in school, eventually dropping out before graduating. To date, Gener has not

completed a high school equivalency degree, and, when recently tested, he reads at a second grade level.

To protect her son from the worsening conditions at home and to curb his escalating behavioral problems, Gener's mother sent Gener to live for an extended period time in Puerto Rico with his maternal grandparents. Gener resided there for over a year and fared well, living without incident or problems.

When Gener returned from Puerto Rico, however, he found himself back in his old neighborhood in the Bronx with his old friends, including co-conspirator, and alleged conspiracy ringleader, David Delarosa. Gener was arrested for a non-narcotics offense (his first arrest) in the summer of 2001, soon after his return from Puerto Rico, and was placed in the Spofford Detention facility by the local family court. Ultimately, Gener was placed with the Office of Children and Family Services in the Berkshire Farms residential juvenile group home (``Berkshire Farms'') until June 2002.

**The Offense Conduct**

The indictment filed in this action charges that from at least 1999 through May 2004, Gener, along with his nineteen co-defendants and others, were members of a

6

criminal organization in the Bronx that controlled a three-block strip of Daly Avenue between East 179th Street and Bronx Park South (the "Daly Avenue Organization" or the "Organization").   According to the indictment, the Organization sold heroin all day and late into the night during the period identified in the indictment, conducting tens of thousands of hand-to-hand heroin transactions.   The Organization operated out of several buildings, including 2105 Daly Avenue and 2114 Daly Avenue.

Gener was a "worker" or "pitcher" for the Organization.   Workers or pitchers for the Organization would be provided heroin on consignment by managers in the Organization, and would then sell the heroin to customers, paying the managers for the heroin as they were able to sell it.   Workers and pitchers also acted as "steerers," directing customers on Daly Avenue to other workers or to managers to complete sales of heroin.   According to the indictment, eleven of Gener's co-defendants also acted as workers or pitchers.

Based on trial testimony before the Court, the Organization sold an average of twenty-five bundles of heroin a day, which amounts to approximately half of a kilogram per month, although the actual amount could vary

from month to month.[1]  With respect to Gener specifically, the Court estimates that he should be held accountable for conspiring to distribute between 3 and 10 kilograms of heroin during his eleven month involvement (from September 2002 through December 2002 and from mid-summer 2003 through December 2003)[2] with the conspiracy.

---

[1]  Although the government asserts that the Organization sold "as much as fifty bundles of heroin a day," which is the equivalent of 500 glassines of heroin a day, the Court finds an average daily distribution of twenty-five bundles.  The trial testimony of one cooperating witness, who is a former member of the Organization, reveals that the sale of forty to fifty bundles was the "biggest number of bundles [the witness could] ever remember selling in one day."  (Trial Trans. p. 137) (emphasis added).  That same witness a few moments later then said, in response to further questioning by the government, that "the most bundles is like probably eighty to a hundred."  (Tr. Trans. p. 137).

However, a different cooperating witness testified on direct examination that "on an average day" he would be able to sell "anywhere from a couple of bundles, like two bundles, three bundles, all the way up to thirty bundles."  (Tr. Trans. p. 387).  On a slow day he would sell "anywhere from five bundles or less," and on a "really busy day, anywhere like up to eighty bundles."  (Tr. Trans. p. 388).  But, he then testified that this latter number was not based on his own experience -- but rather gleaned "from talk because you just like hear the guys either complaining about how little drug money they made or they could be boasting about how much drugs they sold that day."  (Tr. Trans. p. 388) (emphasis added).

The Organization operated in three shifts, with two people -- a manager and a pitcher -- working each shift.  The pitcher conducted most of the sales, while the manager may have sold if the opportunity arose.  (Tr. Trans. p. 135).  The Court considered both the structure of the Organization and the testimony presented regarding sales when determining the average daily distribution of heroin to attribute to the conspiracy.

[2]  Gener was involved in the conspiracy September 2002 through December 2002 and from mid-summer 2003 through

8

Gener was arrested on June 15, 2004.

## The Relevant Statutory Provisions

The statutory minimum term of imprisonment for the sole count of the indictment is ten years and the maximum term is life, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. The applicability of the statutory minimum sentence may be limited in certain cases pursuant to 18 U.S.C. §§ 3553(f)(1)-(5).

If a term of imprisonment is imposed, the Court subsequently shall impose a term of supervised release of at least five years pursuant to 21 U.S.C. § 841(b)(1)(A).

Gener is not eligible for probation because the instant offense is one for which probation has been

---

December 2003 (Defendant Sentencing Memorandum, dated October 5, 2005, pp. 4-5). Given Gener's own representations, his eleven month involvement implicates the distribution of an estimated 5.5 kilograms of heroin for the conspiracy.

Had Gener's participation continued through the time of his arrest on June 15, 2004, he would be held accountable for the distribution of approximately 8.5 kilograms of heroin. Whether attributing 5.5 or 8.5 kilograms of heroin distribution to Gener over the length of his involvement in the conspiracy, the distribution range remains the same: between 3 and 10 kilograms of heroin.

expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

The statutory maximum fine is $4 million, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. A special assessment of $100 is required. See 18 U.S.C. § 3013.

Gener may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court pursuant to 21 U.S.C. § 862(a)(1)(A). Federal benefit is defined to mean " `any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States' but `does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility.'" See 21 U.S.C. § 862(d).

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the

defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

## The Guidelines

The November 1, 2004 edition of the United States Sentencing Commission, Guidelines Manual ("U.S.S.G.") has been used in this case for calculation purposes, in accordance with U.S.S.G. § 1B1.11(b)(1).

The guideline for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 is found in U.S.S.G. § 2D1.1(a)(2), which specifies that the base offense level is set in accordance with the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(2). At his allocution, Gener indicated that he knowingly conspired with others to possess, with intent to distribute, heroin. The Court finds that the amount for which Gener should be held accountable is between 3 and 10 kilograms of heroin. In light of this latter amount, and pursuant to the Drug Quantity Table, the base offense level is 34.

Based on Gener's plea allocution, he has accepted responsibility for the instant offense. Furthermore, since he offered timely notice of his intention to plead guilty, thus allowing the government to allocate its resources more

efficiently, the offense level is reduced three levels, pursuant to U.S.S.G. §§ 3E1.1(a), (b).

**Disputed Adjustment**

*Safety Valve*

Gener argues he should be eligible for a two level reduction under the safety valve provision, which requires that an individual have no more than one criminal history point. See U.S.S.G. §§ 5C1.2(a)(1)-(5).

Gener was adjudicated a juvenile delinquent in 1999 for Criminal Trespass in the Third Degree. He was arrested for being a passenger in a stolen rental car driven by a friend. Details of his arrest are not available as case records have been sealed. The Bronx County Family Court imposed a sentence of ten months at a limited secure facility.

Section 4A1.2(d)(2)(A) of the Guidelines requires that each "adult or juvenile sentence to confinement of at least sixty days" trigger two criminal history points "if the defendant was released from such confinement within five years of his commencement of the instant offense." U.S.S.G. § 4A1.2(d)(2)(A). However, since a family court

judge may consider an array of options when sentencing a youth, "juveniles may be placed in foster care, or in group homes, or in residential treatment centers, or in secure prison-like facilities. There may, then, be cases in which an extensive 'sentence of confinement' (say to a juvenile Outward Bound program) would not even be roughly equivalent to a sixty-day prison sentence. And it may be that the confinement ordered is not directly related to the gravity of the offense. Judges may, for instance, fashion a disposition on the basis of the juvenile's home environment, and the need to remove the individual from that setting." United States v. Johnson, 28 F.3d 151, 155 (D.C. Cir. 1991). See Kent v. United States, 383 U.S. 541, 554-55 (1966).

Upon Gener's juvenile delinquent adjudication, he was placed with Berkshire Farm, which is a residential juvenile home, through the Office of Children and Family Services. According to the PSR, he was placed there for educational purposes. This Court finds that the imposition of two criminal history points is unwarranted because Gener was not sentenced to a term of at least sixty days in a "prison-like facility." Johnson at 155. He was sentenced to a limited secure facility, and the length of confinement

13

was not directly related to the gravity of the offense but rather was governed by his family circumstances and his special personal needs.

Furthermore, Gener's juvenile delinquent records had been sealed pursuant to New York state law, and thus no criminal history points should be assigned. See United States v. Beaulieau, 959 F.2d 375 (2d Cir. 1992); United States v. Cox, 235 F.3d 126 (2d Cir. 2001); United States v. Reyes, 13 F.3d 638 (2d Cir. 1994). Specifically, in holding that appellant's prior juvenile adjudication should not be counted pursuant to U.S.S.G. § 4A1.2, the court in Beaulieau noted that the sealing of a juvenile adjudication is intended to protect juveniles from the continuing consequences of their convictions. Beaulieau at 381.

Taking the foregoing into account, only one criminal history point is assigned to Gener for his 1999 trespass offense. Thus, he is eligible for the two level reduction under the Guideline's safety valve provision pursuant to U.S.S.G. § 5C1.2(a).

## Remaining Calculations

The adjusted offense level resulting from the foregoing calculations and discussion is 29.

Based on the offense level of 29 and a Criminal History Category of I, the guideline range for imprisonment is 87 to 108 months.

The authorized term for supervised release under the guidelines is five years, pursuant to U.S.S.G. § 5D1.2(b).

Gener is not eligible for probation because the applicable guideline range is in Zone D of the Sentencing Table, pursuant to U.S.S.G. § 5B1.1(b)(2), comment. n.2.

The fine range for the instant offense under the guidelines is from $17,500 to $4 million, pursuant to U.S.S.G. §§ 5E1.2(c)(3)(A) and 5E1.2(c)(4).

Subject to Gener's ability to pay, the expected costs to the government of any imprisonment, probation, or supervised release shall be considered in imposing a fine, pursuant to U.S.S.G. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for

imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to U.S.S.G. § 5F1.6, eligibility for certain federal benefits may be denied to any defendant convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2nd Cir. 2005). In particular, section 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the penalty "provide just punishment for the offense" that simultaneously "afford[s]

16

adequate deterrence to criminal conduct" as required by §
3553(a)(2)(B).

As discussed earlier, Gener has struggled with
myriad obstacles over the course of his young life.    In
addition to fighting to overcome the severe effects of a
major learning disability, he has received counseling and
medication    in    order    to    battle    the    emotional    and
psychological difficulties he has faced.    While wrestling
with all of these issues, his father's health began to
deteriorate, which shifted the family's focus away from
Gener and placed it upon his father. His father died from a
long-term illness in January 2003, and, as reported to the
Court, Gener still suffers from the loss of his father.

By age seventeen, Gener was a full-fledged drug
addict, using marijuana regularly and, often, many times a
each day.    At age eighteen, he began using ecstasy and
eventually escalated his use of that drug to once or twice a
week.    Gener also reports excessive use of alcohol and the
occasional use of cocaine.    Although Gener had been using a
variety of drugs prior to his father's death, his drug use
increased substantially after the loss of his father.

As stated previously, Gener dropped out of high
school before graduating.    He has minimal education and few
marketable    skills.        With    such    limited    employment

opportunities, he had virtually no job prospects and sold drugs with the Organization to support his drug addiction.

Gener has one youthful offender conviction for Criminal Possession of a Controlled Substance arising from his participation with the Daly Avenue Organization. He received a sentence of five years probation, which he began serving in January 2002. At the time of his arrest in the instant matter, he had not received any violations of probation and seemed to be faring well under his probation officer's supervision. Additionally, Gener already has served approximately 17 months in jail, which is a substantial amount of time for a young man who has never been incarcerated previously. As such, imposing the anticipated sentence on this twenty-one year old man achieves both the ``just punishment'' and ``adequate deterrence'' sought under 18 U.S.C. §§ 3553(a)(2)(A),(B).

Finally, in considering the remaining sentencing factors under 18 U.S.C. § 3553(a), the Court must take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'' 18 U.S.C. § 3553(a)(6). Since Booker, a growing number of courts have "held that sentencing judges are `no longer prohibited from considering the disparity between co-defendants in fashioning a reasonable sentence.'" Ferrara v. United States, -- F.3d --

, 2005 WL 1205758, at \*11 (D. Mass. May 13, 2005) (quoting United States v. Hensley, No. 2:04 CR 10081, 2005 WL 705241, at \*2 (W.D. Va. Mar. 29, 2005)); see also United States v. McGee, -- F.3d --, 2005 WL 1324815, at \*17 (7th Cir. June 3, 2005); Simon v. U.S., 361 F. Supp. 2d 35, 49 (E.D.N.Y. 2005).[3]

---

[3] It should be noted that in an unpublished summary order that was entered after Booker and Crosby were announced, the Second Circuit reaffirmed the construction of section 3553(a)(6) announced in United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991) (stating that "[t]o reduce the sentence by a departure because the judge believes that the applicable range punishes the defendant too severely compared to a co-defendant creates a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country"). See United States v. Toohey, 2005 WL 1220361, at \*2 (2d Cir. May 23, 2005). The Toohey court stated:

> [Even after Booker,] Joyner's construction of the role the Guidelines play in [the] § 3553(a)(6) consideration remains the same. See United States v. Booker, 125 S.Ct. at 761, 767 (emphasizing the continued importance of the Guidelines to avoiding unwarranted sentencing disparities). Thus, a sentencing court does not reasonably satisfy its statutory obligation under § 3553(a)(6) when it only compares discrete cases or defendants. Rather, to identify a reasonable sentence, § 3553(a)(6) expects a court to consider whether a defendant is favored or disfavored by a particular sentence "compared to all those similarly situated defendants." United States v. Joyner, 924 F.2d at 461.

Id.

The majority of Gener's co-defendants are pitchers or workers within the Organization, many of whom have minimal criminal histories. These co-defendants have benefited from the ``safety valve'' provision and, like Gener, are not subject to the statutory minimum mandatory 120 months incarceration. All of Gener's co-defendants have similar upbringings, receiving little stability and support during their childhoods, and developing addictions to controlled substances at an early age.

Gener's similarly situated co-defendants were involved in the conspiracy for a comparable length of time as Gener, and, like Gener, are held accountable for distributing 3 to 10 kilograms of heroin over the duration of their involvement. These co-defendants have been sentenced to either 48 or 60 months incarceration followed by five years of supervised release. The Court takes note of these sentences imposed on Gener's similarly situated co-defendants in an effort to be aware of the "just punishment" afforded other co-defendants and thereby "avoid unwarranted sentence disparities" in accordance with 18 U.S.C. § 3553(a)(6).

Furthermore, the record illuminates Gener's prolonged struggle with a severe learning disability and its resulting emotional and psychological problems. It has been

shown that Gener responds well to counseling, therapy and drug treatment, which the Court also has taken into consideration. The government has not objected to the defense presentation in this regard.

## The Sentence

For the instant offense, Gener is sentenced to time served and five years supervised release with the special condition that he be confined to his mother's residence in Puerto Rico for a period of thirty-six months while attending or receiving special education classes, vocational training, drug treatment and psychotherapy as needed.

A special assessment fee of $100 payable to the United States is mandatory and due immediately. Because Gener lacks financial resources and in consideration of the factors listed in 18 U.S.C. § 3572, no fine is imposed.

As mandatory conditions of supervised release, Gener shall (1) abide by the standard conditions of supervision (1-13); (2) not commit another federal, state, or local crime; (3) not illegally possess a controlled substance; and (4) not possess a firearm or destructive device.

Furthermore, the standard conditions of supervision (1-13) shall be imposed with the following special conditions:

(1) Gener will participate in a program approved by the United States Probation Office, which program may include testing to determine whether Gener has begun using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. Gener will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

(2) Gener shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. Gener shall inform any other residents that the premises may be subject to search pursuant to this condition.

(3) Gener shall provide the probation officer with access to any requested financial information.

(4) Gener shall comply with the conditions of home confinement for a period of thirty-six months. During this time the defendant will remain at his place of residence except for employment, medical treatment, vocational training, special education classes and other activities approved by the probation officer. The defendant will maintain a telephone at his place of residence without call forwarding, a modem, caller ID, call waiting, or portable cordless telephones for the above period. At the direction of the probation officer, the defendant shall wear an electronic monitoring device and follow electronic monitoring procedures specified by the probation officer. Home confinement shall commence on a date to be determined by the probation officer. Should home confinement be imposed, the defendant shall pay the costs of home

22

confinement on a self payment or copayment basis as directed by the probation officer.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

Gener shall report to the nearest Probation Office within 72 hours of release from custody and shall be supervised by the district of residence.

This sentence is subject to modification at the sentencing hearing now set for October 26, 2005.

It is so ordered.

New York, NY

October  ⸝ 6  , 2005

ROBERT W. SWEET
U.S.D.J.